# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JOHN GEORGE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | Civil Case No.  04-937-GPM |
| EUGENE MCADORY, et al., ) | |
| ) | |
| Defendants. ) | |

## REPORT AND RECOMMENDATION

**FRAZIER, Magistrate Judge:**

Before the Court is defendants' motion for summary judgment (Doc. No. 48).  Plaintiff filed this § 1983 action challenging the conditions of his confinement at Menard Correctional Center. He claims he suffered from symptoms of asthma and that defendants McAdory and Spiller deprived him of his Eighth Amendment right to be free from cruel and unusual punishment by refusing to assign him to a non-smoking cell or create a smoke-free environment.  The motion is opposed (Doc. No. 59).

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  To determine whether there is a genuine issue of material fact, courts construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in favor of that party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Viewing the evidence in plaintiff's favor, the materials facts are as follows.[1]  In 2003 and 2004, plaintiff, John George, was an inmate at Menard Correctional Center.  George is a former smoker who suffers respiratory and cardiac symptoms.  He has been diagnosed with asthma, bronchitis, high cholesterol, and cardiac obstructive pulmonary disease.

Defendant McAdory was the warden at Menard between January 1, 2003, and May 15, 2004, and defendant Spiller was an assistant warden in charge of programs at the facility.  One of defendant Spiller's duties was to review inmate grievances.  The defendants' actions regarding plaintiff's confinement were taken under color of state law.

Menard is an old facility, and neither defendant helped design the structure or the cellhouse ventilation systems.  There are exhaust fans in the cellhouses; however, these fans are not operated under normal circumstances.  They are designed to quickly exhaust the cellhouse in the event of a fire.  General population cells, including those in the west cellhouse, are open-front cells.  Some of the cells in the segregation unit - in the north cellhouse - are closed-front cells.

In 1994, the director of the Illinois Department of Corrections instructed wardens to establish written procedures for designating non-smoking cells or areas, as deemed necessary based on the number of complaints received.  Where feasible, the wardens had authority to designate housing wings or units as smoke free.

The west cellhouse is composed of five levels with galleries on two sides, divided by a open area in the middle.  The last five cells on each gallery are designated as non-smoking cells.  Cells in the segregation unit, located in the north cellhouse, are also designated as non-smoking cells.

---

[1] Some of the materials contain statements that are illegible.  Illegible statements have not been considered.

Because cells in general population have open fronts, the segregation unit is the only living area in the prison that is routinely smoke free.

On April 22, 2003, plaintiff prepared an emergency grievance claiming that he had a serious medical need to be housed in a smoke free environment. He received no response.

In July, 2003, Dr. Ahmed evaluated plaintiff's medical condition, diagnosed an exacerbation of asthma, and admitted plaintiff to the infirmary. Plaintiff received nebulizer treatments, medications, and advice regarding breathing, fluid intake, and inhaler use. Two days later, plaintiff was discharged from the infirmary in improved condition. When Dr. Burrows prepared a summary of plaintiff's health, he ordered a low bunk, low gallery housing assignment for six months.

When plaintiff returned to the west cellhouse, he was assigned to a single-man cell in the middle of three gallery. One gallery is the lowest level and three gallery is one level above one gallery. Some of the inmates living in the cells adjacent to plaintiff's cell were smokers.

Approximately one week later, plaintiff received additional treatment for symptoms of asthmatic bronchitis. Dr. Ahmed formed the opinion that plaintiff had suffered a mild asthma exacerbation and was showing "inability to thrive" in his housing unit.

In August, 2003, plaintiff made an effort to refuse his housing assignment in order to obtain reassignment to smoke free housing in the segregation unit.

On September 22, 2003, plaintiff sent an emergency grievance to defendant McAdory, regarding exposure to second hand smoke. Plaintiff received no response.

In January, 2004, plaintiff was admitted to the infirmary after he made a false report of an asthma attack.

On February 10, 2004, plaintiff sent written correspondence to defendant McAdory, explaining that he intended to file litigation regarding his exposure to second hand smoke at Menard. Plaintiff sent a copy of his letter to defendant Spiller. He received no response.

On March 3, 2004, an environmental health coordinator conducted a qualitative ventilation survey at Menard Correctional Center and detected no conditions associated with inadequate ventilation.

On April 14, 2004, Dr. Ahmad evaluated plaintiff's medical condition and diagnosed moderate asthma. He prescribed medication, issued a non-smoking permit for one year, and renewed low bunk, low gallery permits.

On April 16, 2004, plaintiff sent written correspondence to the defendants regarding the issue of second hand smoke. He received no response.

On April 22, 2004, plaintiff prepared a grievance accusing the defendants of exposing him to unreasonable levels of tobacco smoke. He asked to be placed in a smoke free environment. Plaintiff's counselor responded, advising plaintiff to complete a form to request non-smoker status. A grievance officer evaluated plaintiff's concerns and learned that he was living in a single cell in a smoke free environment. The grievance officer recommended that the grievance be declared moot. On April 29, 2004, defendant Spiller reviewed the grievance report and agreed with the grievance officer's recommendation.

On June 18, 2004, plaintiff's medical condition was evaluated by a doctor, who assessed severe asthma exacerbation with chest pain. When plaintiff's symptoms of shortness of breath and chest pain were not relieved with initial treatment, he was transferred to Chester Memorial Hospital, where he underwent additional treatment, as well as diagnostic testing. An EKG showed that

plaintiff's heart rate was slightly tachycardic. He underwent a stress test, which was interpreted as positive. Plaintiff's final diagnosis was acute asthmatic episode, angina, and coronary artery disease.

Plaintiff returned to Menard Correctional Center on June 22, 2004, and was discharged from the prison infirmary in improved condition five days later. In summarizing plaintiff's health, Dr. Ahmed explained that plaintiff ran out of medication and experienced an exacerbation of cardiac obstructive pulmonary disease. Plaintiff had no complaints and asked to be returned to his housing unit.

On August 25, 2004, plaintiff had breathing problems and received a nebulizer treatment. He refused his housing assignment in an effort to obtain a housing assignment in a smoke free environment.

Throughout plaintiff's confinement, neither defendant McAdory nor defendant Spiller made decisions regarding plaintiff's housing assignment. Plaintiff usually lived by himself. On relatively rare occasions, he was assigned to share a cell with another inmate. All of his cellmates were nonsmokers. Plaintiff was never assigned to a cell designated as a non-smoking cell during his confinement at Menard.

### I.    Eighth Amendment - Objectively Serious Deprivation.

The defendants argue that plaintiff has failed to show that the conditions he experienced at Menard Correctional Center were objectively serious. Specifically, they argue that plaintiff has not shown that he was exposed to unreasonably high levels of environmental tobacco smoke (ETS) which created a serious threat to his future health. Plaintiff takes the position that he has presented enough evidence to support a present injury Eighth Amendment claim. He argues that the defendants knew he had a serious medical need for a smoke-free environment and failed to provide smoke-free

housing.  Because plaintiff is not attempting to prove a claim based on future injury, the evidence is evaluated under the standard applicable to present injury claims.

Under the Eighth Amendment, plaintiff is entitled to be housed in humane conditions, with adequate food, clothing, shelter, and medical care.  *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). To prevail on his claim, plaintiff must satisfy an objective element by showing a sufficiently serious deprivation.  *Id*.  In certain circumstances, exposure to ETS may pose an objectively serious threat to health, sufficient to amount to cruel and unusual punishment.  *Helling v. McKinney*, 509 U.S. 25, 35 (1993).  To satisfy the objective element of a present injury claim, plaintiff must show that the conditions of his confinement were sufficiently serious, depriving him of the minimal level of life's necessities.  The hurdle is high - there must be an extreme deprivation violating current standards of decency.  *Hudson v. McMillian*, 503 U.S. 1, 9 (1992); *Board v. Farnham*, 394 F.3d 469, 486-87 (7th Cir. 2005)(conditions in a cell serviced by a broken, inadequate, and contaminated ventilation system generating fibreglass dust and causing health problems were objectively serious); *Oliver v. Deen*, 77 F.3d 156, 158-61 (7th Cir. 1996)(mildly asthmatic inmate with relatively minor symptoms did not have a serious medical need for a non-smoking environment).

The evidence, viewed in plaintiff's favor, shows that he suffered serious respiratory and cardiac ailments, that a doctor approved a permit restricting housing to a non-smoking cell, and that plaintiff was never assigned to a non-smoking cell in the west cellhouse.  Rather, he was assigned to live by himself or share a cell with a non-smoker.  He spent periods of time in the health care unit and other times had smoke free housing in the north cellhouse.  In the west cellhouse, plaintiff was exposed to second-hand smoke generated by smokers in adjoining cells.  At times, he experienced severe respiratory and cardiac symptoms requiring treatment.  While plaintiff attributes these

episodes to exposure to ETS, the record contains no competent medical evidence linking plaintiff's severe health problems to the quality of the air in the west cellhouse. A treating physician attributed plaintiff's most severe episode to insufficient medication (Doc. No. 59-3, p. 25). Furthermore, no evidence demonstrates that the air quality in the west cellhouse was exceptionally poor or that the standards of contemporary society do not tolerate exposure to smoke generated by individuals living nearby.[2] In sum, there is insufficient evidence to support a finding that plaintiff was exposed to harsh conditions posing a serious risk to his health.

### II - Eighth Amendment - Deliberate Indifference

Defendants also argue that plaintiff has not proved the subjective element of his claim. To satisfy this element, plaintiff must show that the defendants knew about his plight and responded with deliberate indifference. *Helling*, 509 U.S. at 35.

Defendants advance two arguments on this issue. First, they point to plaintiff's own behavior, saying he neglected his own health by smoking most of his life and by refusing to elect to undergo bypass surgery. Because plaintiff's own actions have no relevance to the legal concept of deliberate indifference, this argument is rejected.

The defendants also argue that they were not personally involved in a Constitutional deprivation. They note that they did not design the prison facility or select plaintiff's housing assignment. Plaintiff argues that the defendants learned about his plight through written correspondence and formal grievances. He claims that their failure to respond with affirmative action permits a finding of deliberate indifference.

---

[2] In *Helling*, the plaintiff shared a cell with an inmate who smoked five packs of cigarettes a day. *Helling*, 509 U.S. at 28.

-7-

In some situations, evidence that a prisoner sent many letters to a defendant that went unanswered can establish that the defendant knew of and ignored unconstitutional conduct. *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995). To reach this result, plaintiff must show that these defendants received adequate notice of a constitutional violation and knew sufficient details requiring intervention. *Vance v. Peters*, No 94-3070 (7th Cir. 1996). That is, the defendants must have known about inhumane conditions and disregarded an excessive risk to plaintiff's health. *Farmer v. Brennan*, 114 S. Ct. 1970, 1979 (1994).

With respect to defendant McAdory, the evidence shows that he delegated the task of reviewing inmate grievances. Hence, there is no factual basis for an inference that McAdory read the information provided in plaintiff's grievances. McAdory may have read correspondence authored by plaintiff on February 10, 2004, written before Dr. Ahmad decided to issue a permit for a non-smoking cell assignment. In this letter, plaintiff complained about second hand smoke, threatened litigation, and advocated for a policy change. McAdory may also have read correspondence authored by plaintiff on April 16, 2004. In the interim, McAdory was notified of the results of a ventilation survey. The tests showed no conditions associated with inadequate ventilation. This evidence could not support a finding that defendant McAdory actually knew that plaintiff faced harsh conditions posing a serious risk to his health.

With respect to defendant Spiller, the evidence shows that Spiller was informed of plaintiff's concerns regarding his exposure to second hand smoke, as well as the results of a grievance officer's investigation, which showed that plaintiff was assigned to a smoke free environment in the north cellhouse. This evidence could not support a finding that defendant Spiller knew that plaintiff faced harsh conditions posing a serious risk to his health.

### III. Qualified Immunity

The defendants also argue that they have qualified immunity from an award of damages. In order to resolve this argument, the Court first considers whether the alleged conduct violated a Constitutional right, taking the facts in the light most favorable to plaintiff. If so, the Court considers whether the right was clearly established in the light of the specific context of the case. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). As noted above, the evidence does not show that the defendants exposed plaintiff to exceptionally harsh conditions or actually knew that plaintiff faced a serious health risk in the west cellhouse. Absent a constitutional deprivation, these defendants are immune from a damage award.

### IV. Conclusion

IT IS RECOMMENDED that defendants' motion for summary judgment (Doc. No. 48) be GRANTED. Judgment should enter in favor of defendants Eugene McAdory and William Spiller. If this recommendation is adopted, no claims will remain for decision.

SUBMITTED:  May 16, 2007  .

*s/ Philip M. Frazier*
**PHILIP M. FRAZIER**
**UNITED STATES MAGISTRATE JUDGE**